| 83 | 517 |
| 181 | 547 |
| 83 | 517 |
| 209 | ᵇ 32 |

# Monocacy Bridge Company *versus* American Iron Bridge Manufacturing Company.

1. A bridge company advertised for proposals for a bridge, the proposals to specify the greatest strain to which the metal would be subjected in sustaining a weight of one ton to each lineal foot. A bridge manufacturing company sent in proposals, in writing, with such specifications. These proposals were accepted and an agreement entered into between the two companies, wherein it was stipulated that the bridge should be built " in accordance with the annexed specifications." . The only specification annexed was a printed copy of the advertisement for proposals pasted on the back of the agreement. The manufacturing company built the bridge and brought covenant for the contract price. At the trial the court below refused to admit the letter containing the proposals, to explain the reference in the specifications, and also rejected an offer to show that before the contract was awarded plaintiffs' president had made certain declarations to defendants which had induced the making of the agreement. *Held*, that this evidence should have been admitted.

2. Where parts of a covenant are waived by the defendant, the waiver does not render it a new contract, and the remedy is by action of covenant.

3. If there has been substantial performance the plaintiff is entitled to recover, but not necessarily the whole contract price. There may be defects in the fulfilment of such a nature as to preclude the plaintiff from recovery, from which the jury would have a right to make a deduction as compensation to defendant.

4. The declarations and admissions of an agent, when not within the scope of his authority, which is merely for a special purpose, are not admissible in evidence to affect his principal.

February 26th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Berks county:* Of January Term 1876, No. 219.

Covenant by the American Iron Bridge Manufacturing Company against the Monocacy Bridge Company.

Defendants pleaded covenants performed, *absque hoc.* The facts were these: On the 22d of April 1870, the defendants advertised for proposals to be received on the 7th of May following for the erection of a bridge of wrought iron over the Schuylkill river near Monocacy Furnace. By the terms of this advertisement the bridge was " to be of sufficient strength and warranted to carry a load of one ton to each lineal foot, proposals to specify the greatest strain per square inch in pounds to which the metal will be subjected in sustaining the weight required, viz., one ton to each lineal foot." On the 4th of May, the plaintiffs, in a letter by James McCarty, the president of the Iron Bridge Manufacturing Company, to the secretary of the Monocacy Bridge Company, sent in proposals, which stated that they would " guarantee the bridge to bear a rolling load of one ton to a lineal foot," and added, " the calculation is as follows for the strength of the bridge: ten thousand pounds allowed per square inch for tensile strain, and eight thousand pounds for compression strain."

These proposals were accepted, and on the 7th of May an agree-

[Monocacy Bridge Co. *v.* American Iron Bridge Mf'g Co.]

ment was entered into between the two companies, which provided that " the American Iron Bridge Manufacturing Company, of the first part, do hereby agree with the Monocacy Bridge Company, of the second part, to build and erect for them, over the river Schuylkill, in said county, near Monocacy Furnace, on abutments to be furnished by said parties of the second part, a wrought-iron bridge, according to the specifications of the parties of the second part, hereunto annexed. The said bridge to be of three spans, each one hundred feet long and eighteen feet wide in the clear. The floor beams or joists to be of white oak, and fourteen inches wide by four inches thick, and the flooring to be of white oak plank three inches thick; and the structure to be built and erected in a good, workmanlike manner, and of good materials, and is to be completed and ready for use on or before the 1st day of November 1870, in accordance with the annexed specifications.

"And the said parties of the second part do hereby promise and agree for themselves and their successors in office, that in consideration of the covenants and agreements above set forth, they will furnish all necessary abutments and masonry for said bridge on or before the 7th day of September 1870, and will pay or cause to be paid to said parties of the first part, or their assigns, for said bridge, the sum of $7800, in the following manner: One-half when the bridge is put on walls, and the remaining one-half within sixty days thereafter."

The only specification annexed was a printed copy of the advertisement for proposals which was pasted on the back of the agreement.

Of the contract price $3754.96 were paid by defendants, and plaintiffs brought this suit for the balance.

On the trial before Van Reed, A. L. J., defendants offered in evidence the written proposal dated May 4th 1870, of the plaintiffs to the defendants, for the construction of the bridge as part of the transaction, and as explaining the reference in the specification which required " proposals to specify the greatest strain per square inch in pounds to which the metal will be subjected in sustaining the weight required," and supplying the deficiency in the specification; to be followed by evidence that before the defendants awarded the contract to plaintiffs, their president appeared before the defendants' board and explained his proposal, and said the bridge should be built of the strength specified, " will guarantee it to bear a rolling load of one ton to the lineal foot. The calculation is as follows for the strength of the bridge: 10,000 pounds allowed per square inch for tensile strain, and 8000 pounds for compression strain." And that in consideration of these promises and representations the contract was awarded to plaintiffs, and the agreement entered into.

Upon objection, the court rejected this evidence, which was the first assignment.

Defendants offered letter dated December 14th 1870, from James McCarty to J. C. Wright, president Monocacy Bridge Company, authorizing Moseley to consult with defendants' engineer and settle all matters about the bridge, and saying whatever agreed to by him will be satisfactory; to be followed by telegrams, James McCarty to Joseph C. Wright, naming time to meet General Moseley—the first dated December 14th 1870, and the second December 16th 1870; to be followed by proof that Moseley did meet the defendants' board and engineer, and that he then admitted that the bridge was not of the strength required by contract, and that they never intended to build a bridge of the strength specified in contract, and that he himself owned the majority of the plaintiffs' stock.

The rejection of this evidence constituted the second assignment.

There being proof that General Moseley was the engineer of the plaintiffs and the patentee of the bridge; that the bridge in controversy was planned and designed by him, and under his direction, the defendant offered a letter dated the 14th December 1870, from the president of plaintiffs to J. C. Wright, president of the defendants, constituting Moseley their agent "to consult with defendants' engineer and settle all matters about the bridge," and expressly stipulating that whatever should be agreed to by him "should be satisfactory," to be followed by evidence of the representations, declarations and admissions of Moseley respecting the subject-matter, viz., the bridge, made at the time he met the defendants, under the authority contained in the letter, and whilst he was transacting the business of the plaintiffs, entrusted to him by the plaintiffs.

The rejection of this evidence was the third assignment.

The defendants proposed to ask Mr. Wright, its former president, "wherein, if at all, does the bridge as built by plaintiffs differ from the bridge required by contract? What, if anything, is the difference in cost and value of the bridge erected and the bridge required by contract?" And to ask Mr. Lorenz, the plaintiffs' expert, "If one were required to calculate the strength of a bridge which was to bear the weight specified for this bridge, and the builder had made it optional with the other party to take either lattice bars or suspension rods, would you calculate the strength of lattice bars to ascertain its practical strength? Would not this bridge be subjected to a compression strain of more than 8000 pounds, and a tensile strain of more than 10,000 pounds, in carrying a moving load of one ton to each lineal foot?"

All of which proposals were rejected and constituted the fourth, fifth, sixth and seventh assignments of error, respectively.

The defendants submitted the following points, with which are given the answers of the court thereto:—

[Monocacy Bridge Co. *v.* American Iron Bridge Mf'g Co.]

1. This is an action of covenant. The declaration avers complete performance ; therefore if the jury believe that the bridge was not constructed eighteen feet wide, and completed by the 1st of November 1870, as stipulated in the contract, there can be no recovery in this form of action.

Answer. " In the affirmative, with this qualification : that if the jury believe that the plaintiffs were deterred from making the bridge of the required width, and from completing it by the 1st of November 1870, by the defendants, or that these two conditions were waived by the defendants, then these two circumstances would not prevent the plaintiffs from recovering."

2. That as the plaintiffs admit and contend that the width of the bridge was changed with the consent of defendants, the whole contract became parol, on the well-known principle " that any alteration of a specialty by parol makes the whole contract parol, and covenant cannot be maintained upon it ;" the verdict must be for defendants.

Answer. " If the jury find that plaintiffs were deterred or prevented from making the bridge of the required breadth, by the interference of the defendants, or that the defendants waived their right to have it just eighteen feet wide, then the contract has not become a parol contract, and covenant can be maintained."

3. That if the jury believe the bridge was not built of the width, nor of the strength, nor within the time stipulated in contract, there can be no recovery.

Answer. " This point is answered in the affirmative, with the limitation as to width and time of completion, as contained in the answer to the first and second points."

4. That time was of the essence of this contract ; and the plaintiffs cannot recover unless the bridge was finished on or before the 1st of November 1870 ; and even if time was waived, there is no averment in the declaration to explain it, and there can be no recovery.

Answer. " If the jury find as in the answer to the first point, then no averment in the declaration was necessary, and this would not prevent a recovery."

5. That as the plaintiffs have only shown part performance of the contract, there can be no recovery in this action, and the verdict must be for defendants.

Answer. " This point is answered in the affirmative, excepting in so far as the plaintiffs were prevented by the defendants, or that strict performance was waived by defendants, if they find that fact, or the deviations from the contract were of a trifling nature."

These answers of the court constituted respectively the eighth, ninth, tenth, eleventh and twelfth assignments of error.

In their charge to the jury the court said : " In order to entitle the plaintiffs to a verdict at all in this action, they must have satisfied

[Monocacy Bridge Co. v. American Iron Bridge Mf'g Co.]

you that they have substantially performed their part of the contract; without this they cannot recover, and your verdict should be for the defendants; but if you shall find that they have substantially fulfilled it, then your verdict should be in their favor for the balance due them upon the contract price, with interest to this time."

This portion of the charge was the thirteenth assignment.

The verdict was for the plaintiffs for $5101.45, and the defendants took this writ, and alleged that the court erred as indicated in the foregoing assignments.

*George F. Baer*, for plaintiffs in error.—The proposal was an essential part of the contract, and it was evidence for the purpose of furnishing the data on which to calculate the strength of the bridge and was admissible as part of the *res gestæ*: Miller v. Fichthorn, 7 Casey 252; Hollingshead v. Allen, 5 Harris 275; Martin v. Berens, 17 P. F. Smith 462. Parol evidence was likewise admissible for the purpose offered: Chalfant v. Williams, 11 Casey 215.

Where the acts of the agent will bind his principal his declarations will: Story on Agency, § 134–137; Robeson v. Schuylkill Navigation Co., 3 Grant 189; Hannay v. Stewart, 6 Watts 487; Shelhamer v. Thomas, 7 S. & R. 106; Magill v. Kauffman, 4 Id. 317; Hough v. Doyle, 4 Rawle 291; Dick v. Cooper, 12 Harris 217; Bank of Northern Liberties v. Davis, 6 W. & S. 285.

The plaintiff cannot recover upon an averment of general performance. He may recover for part performance, if prevented from full performance by the act of defendant, but in such a case he must declare specially: Harris v. Ligget, 1 W. & S. 301; Alexander v. Hoffman, 5 Id. 382; Jordan v. Cooper, 3 S. & R. 564.

An alteration of a specialty by parol makes the whole parol and covenant cannot be maintained thereon: Carrier v. Dilworth, 9 P. F. Smith 406; Vicary v. Moore, 2 Watts 451; Luciani v. Fire Insurance Co., 2 Whart. 167; Spangler v. Springer, 10 Harris 459; McManus v. Cassidy, 16 P. F. Smith 262; Lawall v. Rader, 12 Harris 283.

The court evidently sought to apply the doctrine of Preston v. Finney, 2 W. & S. 53, and Danville Bridge Co. v. Pomroy, 3 Harris 158, to the facts of this case; that where a party, acting honestly, and intending to fulfil his contract, performs it substantially, but fails in comparatively slight particulars, he may recover, subject to a reduction for the imperfections, and damages sustained by not strictly complying with the contract. Had the doctrine of these cases been applied, the jury could have passed upon the merits of this controversy. But the court laid down a new rule, viz.: That if the plaintiffs substantially fulfilled the contract, the verdict should be in their favor for the balance due them upon the contract price, with interest to this time.

[Monocacy Bridge Co. *v.* American Iron Bridge Mf'g Co.]

*William Ward* and *Samuel L. Young*, for defendants in error.—
The letter of McCarty and his alleged representations, written and
made previous to the execution of the contract, are not admissible
to vary it.    The evidence was not offered for any of the purposes
for which parol testimony is admitted to affect a written contract,
viz., fraud, accident, mistake, trust, to rebut the presumption of an
equity or to explain ambiguities.

The declarations of Moseley could only bind his principal when
within the scope of his authority.    He was but a special agent for
a particular purpose and his declarations were not made at the time
of these transactions, but were in relation to a past occurrence and
therefore inadmissible: Fawcett *v.* Bigley, 9 P. F. Smith 411;
Pennsylvania Railroad Co. *v.* Books, 7 Id. 339; Stewart *v.* Hunt-
ingdon Bank, 11 S. & R. 267.

The opinion of Mr. Wright as to the difference in cost and value
of the bridge erected and the bridge required by contract was inad-
missible for the same reasons.    As Mr. Wright understood nothing
of bridge building, he was not competent to give an opinion as to
cost and value.    Even if an expert, his opinion would not have
been admissible.    Where a price is expressly agreed upon for the
manufacture of an article, the actual cost or value of the article is
not in question.

As to what is sufficient performance to support an averment of
performance, we take the rule to be, that if the party, acting honestly
and with a bonâ fide intention of fulfilling the contract, perform it
substantially—although there is a variance in some comparatively
slight particulars—the plaintiff is entitled to recover on the contract.
If the other party is injured by such variance, he is entitled to a
deduction therefor from the contract price, but if he assents to such
variance with the understanding that no deduction is to be made
from the contract price in consequence, and he accepts the work and
uses it, no injury was done and the question of a reduction of price
does not arise.    And it is the same if one party is deterred or pre-
vented from complete performance by the other party : Preston *v.*
Finney, 2 W. & S. 53; Wilhelm *v.* Caul, Id. 26; Chambers *v.*
Jaynes, 4 Barr 39; see opinion of Judge Grier in this case; Dan-
ville Bridge Co. *v.* Pomroy, 3 Harris 151; Huntingdon & Broad
Top Railroad Co. *v.* McGovern, 5 Casey 78.    The action must be
covenant unless the specialty has been so altered by parol as to make
it a new contract.

This case was originally argued at Harrisburg, on the 3d of June
1876, SHARSWOOD and WILLIAMS, JJ., being absent.    An opinion
therein was delivered by GORDON, J., on the 6th of November follow-
ing, affirming the judgment.    On the 24th of the same month the
plaintiffs in error asked for a re-argument, which on the same day
was ordered, MERCUR and GORDON, JJ., dissenting.    The case was
re-argued on the 26th of February 1877, by the same counsel, and

on the 7th of May 1877 Mr. Justice SHARSWOOD delivered the following opinion:—

We are of opinion that there was error in the rejection of the evidence which forms the ground of complaint in the first assignment.

It appears that on the 22d April 1870, the plaintiffs in error advertised for proposals to be received on the 7th of May following, for the erection of a bridge of wrought iron over the river Schuylkill, near Monocacy Furnace. According to the terms of this advertisement the bridge was "to be of sufficient strength and warranted to carrry a load of one ton to each lineal foot. Proposals to specify the greatest strain per square inch in pounds, to which the metal will be subjected in sustaining the weight required, viz., one ton to each lineal foot." Other particulars are specified not necessary to be now referred to. On the 4th of May, the defendants sent in proposals, which, among other things, stated that they would "guarantee the bridge to bear a rolling load of one ton to the lineal foot." They add: "The calculation is as follows for the strength of the bridge: 10,000 pounds allowed per square inch for tensile strain, and 8000 pounds for compression strain." These proposals were accepted. On the 7th of May the contract was executed, which provided, so far as is material to the question now before us, that the structure was "to be built and erected in a good, workmanlike manner and of good materials, and is to be completed and ready for use on or before the 1st day of November, A. D. 1870, in accordance with annexed specifications." The only specification annexed was a printed copy of the advertisement for proposals. It is plain that the annexing of this advertisement instead of the proposals or a specification drawn up from them was a mistake. The reference in it to the proposals made them a part of it, and the fact that they were to be in the future is explained by the date of the advertisement, and that they were to be received on the 7th of May, the day of the date of the contract. The proposals should have been received in evidence. The parol evidence, that the president of the Bridge Manufacturing Co., the corporation of the defendants, appeared before the plaintiffs' board before the award of the contract, and explained the written proposal, and that it was upon that basis the contract was awarded and the agreement entered into, was competent and ought to have been admitted. It infringed no rule which has ever been laid down on the subject of parol evidence to vary written instruments. It did not vary the agreement. It only rendered complete what was apparently deficient on its face. The paper annexed to the agreement as a specification was manifestly incomplete without the proposal, and it required the parol evidence to show that the proposals were in point of fact the basis of the contract. The case scarcely requires a resort to the well-established principle that parol evidence can always be given to

[Monocacy Bridge Co. *v.* American Iron Bridge Mf'g Co.]

prove mistake in a written contract, but, if it does, that rule fully covers it.    But, in truth, the offer was not to vary the agreement by evidence of a mistake, but to identify and prove a paper which was a part of and incorporated in it by the reference in the specification.

The second and third 'assignments of error are not sustained. The declarations and admissions of Moseley were not within the scope of his authority, which was merely to make a settlement with the plaintiffs.    As to the fourth and fifth assignments, the questions proposed to be asked of the witness Wright were not sufficiently specific to justify us in convicting the learned court of error in not allowing them to be put.    The witness was not an expert, and though there are many things palpable to the senses which it does not require an expert to prove, yet in this case the questions should have been so framed as not to involve in the answers opinions which none but an expert would be competent to express.    As to the sixth and seventh assignments, no doubt the learned judge would have allowed the questions objected to to be put had the proposals been in evidence.    As the case then stood upon the evidence there was no error in the rejection of them.    We find no error in the 8th, 9th, 10th, 11th and 12th assignments, but we think there was good ground to complain of that part of the charge which forms the subject of the thirteenth assignment.    Undoubtedly if there has been substantial performance the plaintiffs are entitled to recover, but not necessarily the whole contract price.    There may be defects in the fulfilment of such a nature as not to preclude the plaintiffs from recovering, but for which the jury would have a right to make a deduction as a compensation to the defendants.

Judgment reversed, and *venire facias de novo* awarded.